UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL D. DRESDNER, et al., | No.  2:23-cv-2038 DAD CSK P |
| Plaintiffs, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| SACRAMENTO COUNTY JAIL, et al., | |
| Defendants. | |

Plaintiffs proceed pro se with an action claiming the wrongful death of inmate Kevin Dresdner while he was incarcerated in the Sacramento County Main Jail.  Plaintiffs seek relief under the Eighth Amendment based on federal question jurisdiction.[1]

As discussed below, this Court finds that this action should proceed on plaintiffs' Eighth Amendment claims against defendants Dylan Schmidt and Deputy Arnold alleged in the third, fourth and fifth claims in plaintiffs' second amended complaint (ECF No. 19).  (ECF No. 23.)  By separate order, the Court is proceeding with service of process on defendants Dylan Schmidt and Deputy Arnold.  These findings and recommendations address the recommended dismissal of the untimely proposed third amended complaint, as well as the remaining defendants and claims alleged in plaintiffs' second amended complaint.

---

[1]  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

1

I.       PLAINTIFFS' PROPOSED THIRD AMENDED COMPLAINT

In this Court's November 23, 2025 screening order, plaintiffs were granted leave to amend to attempt to state cognizable claims against defendants Chris Carlson and Jim Cooper, as well as the County of Sacramento.  (ECF No. 23.)  However, on February 12, 2026, plaintiffs filed an untimely proposed third amended complaint, again naming defendants Dylan Schmidt and Deputy Arnold, but now purportedly naming "Does 1-30, Unknown Names of Medical/Psychiatric Staff, Correctional Officers, Warden" as defendants.[2]  (ECF No. 29 at 1.)

Plaintiffs include no names for any of these additional defendants; thus, they are all doe defendants.  The Ninth Circuit has held that where a defendant's identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other grounds.  Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).  However, in the third amended complaint, plaintiffs do not identify each defendant doe and his or her alleged act or omission that plaintiffs contend violated federal rights.  This is insufficient to put prospective defendants on notice of their alleged actions or omissions that plaintiffs claim violated such rights.  In order to link these doe defendants to the alleged acts or omissions that demonstrate a violation of federal rights, plaintiffs were required to identify the John Doe as best as possible, and allege specific acts taken or not taken by each doe defendant, such as "John Doe 1 did X" and "John Doe 2 and 3 did Y."  Plaintiffs were required to "allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of . . .civil rights."  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Thus, the Court finds that plaintiffs' use of doe defendants in the third amended complaint is problematic.  See Gillespie, 629 F.2d at 642.  It is apparent from the plaintiffs' prior pleadings

---

[2]  Although the plaintiffs signed the third amended complaint on February 10, 2026, the date the pleading was due, the pleading was not filed with the Court until February 12, 2026.  (ECF No. 29.)  Because none of the plaintiffs are incarcerated, they are not entitled to the mailbox rule afforded to incarcerated litigants.  Plaintiffs are cautioned to mail court filings with sufficient time to meet court deadlines.

2

that many of the facts surrounding the decedent's death are currently unknown and must be ascertained through discovery.  Plaintiffs have now identified two individuals by name, so the Court will not further delay this case by requiring plaintiffs to file yet another amended pleading.  Such amendment at this juncture is unnecessary because Rule 15 of the Federal Rules of Civil Procedure, not state law "Doe" pleading practices, governs whether new defendants may be added and if so, whether the claims against them would relate back to the filing of the initial complaint.  Once defendants Dylan Schmidt and Deputy Arnold have appeared in this action, plaintiffs may seek the identity of additional defendants through discovery.  Should plaintiffs learn the identities of the "Doe" parties they wish to serve, they must promptly file a motion to amend pursuant to Rule 15 to file a third amended complaint to add the newly-identified individuals as defendants.  See Brass v. County of Los Angeles, 328 F.3d 1192, 1197-98 (9th Cir. 2003).  If the timing of his amended complaint raises questions as to the statute of limitations, plaintiffs must satisfy the requirements of Rule 15(c), which is the controlling procedure for adding defendants whose identities were discovered after commencement of the action.  Further, unknown persons cannot be served with process until they are identified by their real names, and the court will not investigate the names and identities of unnamed defendants.

Therefore, the Court strikes the third amended complaint as untimely, and because it failed to comply with the November 3, 2025 screening order that granted them leave to state cognizable claims against defendants Chris Carlson and Jim Cooper, as well as the County of Sacramento, which plaintiffs did not do.  By separate order, the Court is proceeding with service of process on defendants Dylan Schmidt and Deputy Arnold.  The Court turns next to address the remaining defendants and claims alleged in plaintiffs' second amended complaint, which the Court previously found were not cognizable.  (ECF No. 23.)

II.    PLAINTIFFS' SECOND AMENDED COMPLAINT

A.  Plaintiffs' Allegations

In the second amended complaint ("SAC"), plaintiffs name seven defendants: Sacramento County Jail ("SCJ"); Jim Cooper, Sacramento County Sheriff; Adult Correctional Health ("ACH"); California Department of Corrections and Rehabilitation ("CDCR"); Chris

Carlson, Parole Officer; Dylan Schmidt, Social Worker; and Deputy Arnold.  (ECF No. 19 at 2-5.)

Decedent Kevin Dresdner was a parolee sentenced to ninety days in the Sacramento County Jail for a parole violation sustained on August 10, 2021.  Plaintiffs aver that decedent was known to the jail facility as a high risk inmate with severe mental health issues, with a history of substance and alcohol abuse.  (Id. at 7.)  On September 20, 2021, decedent was found unresponsive in his cell, with seven fractured ribs, petechiae of his eyes, blood in his throat, and a swollen tongue.  (Id. at 8.)

In the first and second claims, plaintiffs allege that decedent's due process rights were violated by defendant Chris Carlson's failure to provide decedent with an evidentiary hearing and failure to appoint counsel at decedent's parole hearing.  (Id. at 7.)

In the third claim, plaintiffs allege that defendants SCJ, Dylan Schmidt, ACH, and Does 1-20, violated decedent's Eighth Amendment rights as well as privacy laws under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") by sharing decedent's private and sensitive health and mental health information over twelve times in non-confidential settings, i.e. cell-side, exposing protected health information to other inmates, making decedent a "vulnerable target in a hostile environment."  (Id.)

In the fourth claim, plaintiffs allege defendants SCJ, Dylan Schmidt, Deputy Arnold, and Does 1-20 were deliberately indifferent to decedent's health and safety by delaying his move and returning him to an unsafe environment, ignoring his serious needs and failing to monitor and observe him for his safety.  (Id. at 8.)

In the fifth claim, plaintiffs allege that defendants SCJ, Deputy Arnold, Dylan Schmidt, ACH, and "Does" failed to monitor and protect the safety of decedent, who told SCJ staff of his "high level of anxiety, depression and fear" on the day he died, September 20, 2021.  (Id.)  Plaintiffs aver that defendants' failure to recognize suicide warning signs constituted deliberate indifference to decedent's serious medical needs.  (Id.)

In the sixth claim, plaintiffs allege that "[i]f it weren't for the inadequate monitoring, supervision, customs, training and policies enacted under sheriff Jim Cooper, decedent's death

4

could have been prevented." (Id.)

Plaintiffs seek money damages. (Id. at 10.) Plaintiffs provided a copy of decedent's death certificate, and an affidavit pursuant to California Civil Procedure Code § 337.32. (Id. at 11-18.)

B. Noncognizable Claims In SAC

For the reasons stated below, the Court finds that the SAC does not state cognizable claims against defendants Chris Carlson, SCJ, ACH, Jim Cooper and CDCR, or based on a violation of HIPAA. This Court recommends that these claims be dismissed, as set forth below.

*1. Defendant Chris Carlson*

Plaintiffs' first two claims alleging due process violations by defendant Chris Carlson are unclear. (ECF No. 19 at 7.) No context is provided for claim one; the Court is unable to tell whether decedent was entitled to an evidentiary hearing. Similarly, it is unclear whether decedent was denied counsel at the parole violation hearing or when he was seeking parole from prison. These contexts would also assist the Court in determining whether "parole officer" refers to a parole agent or a member of the parole board. This distinction is important to determine whether immunity applies. For example, parole board officials enjoy absolute immunity from suit "when processing parole applications." Sellars v. Procunier, 641 F.2d 1295, 1302 (9th Cir.), cert. denied, 454 U.S. 1102 (1981); Brown v. Cal. Dep't of Corr., 554 F.3d 747, 751 (9th Cir. 2009) ("[P]arole board members are entitled to absolute immunity for parole board decisions."). Further, plaintiffs have not demonstrated that such due process claims were not extinguished upon the death of decedent. Indeed, under either context, the Court could not remedy either due process violation by ordering a new hearing for decedent. These due process claims against defendant Chris Carlson should be dismissed without prejudice.

*2. Defendants SCJ and ACH*

Municipalities and other local government units are among those "persons" to whom § 1983 liability applies. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Counties and municipal government officials are also "persons" for purposes of § 1983. See id. at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989). Local government sub-units, however, are not generally considered "persons" within the meaning of Section 1983.

5

See Vance v. County of Santa Clara, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) (stating that "naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality" and dismissing the Santa Clara Department of Corrections from the action); see also Sanders v. Aranas, 2008 WL 268972, at *3 (E.D. Cal. Jan. 29, 2008) (finding that the Fresno Police Department cannot be sued under Section 1983 because it is a sub-division of the City of Fresno).

Further, a local government may not be held responsible for the acts of its employees or officials under a respondeat superior theory of liability. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Municipal liability must rest on the actions of the municipality, and not on the actions of its employees or officers. See id. To assert municipal liability, the plaintiff must allege that the constitutional deprivation complained of resulted from a policy or custom of the municipality. See id.; Castro v. Cnty. of L.A., 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc).

Here, the SCJ is not a proper defendant in a claim under § 1983 because it is a department of Sacramento County. McCoy v. Sac Cnty. Jail, 2023 WL 1477638, at *3 (E.D. Cal. Feb. 2, 2023). It also appears that defendant ACH is a municipal department. As such, defendant ACH is also not a proper defendant in a claim brought pursuant to § 1983. See Vance, 928 F. Supp. at 996.

It is unclear whether plaintiffs can amend their pleading to state a cognizable claim against Sacramento County. Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, see Monell, 436 U.S. at 690; however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. See Bd. of Cnty. Comm'rs. of Bryan Cnty., 520 U.S. at 403; Monell, 436 U.S. at 691. Local governing bodies therefore may be sued directly under § 1983 for monetary, declaratory or injunctive relief for the violation of federal rights. See Monell, 436 U.S. at 690.

However, to impose municipal liability under § 1983 for a violation of constitutional rights resulting from governmental inaction or omission, a plaintiff must show: "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the municipality had a

6

policy; (3) that this policy amounts to deliberate indifference to the plaintiffs' constitutional rights; and (4) that the policy is the moving force behind the constitutional violation." Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989) (internal quotation marks omitted)).

Here, plaintiffs' policy allegations are too vague and conclusory to determine whether plaintiffs can state a cognizable claim against Sacramento County.

The Court recommends that defendants SCJ and ACH be dismissed without prejudice, and that plaintiffs' putative claims against Sacramento County also be dismissed without prejudice.

3. *Defendant Jim Cooper*

In the SAC, plaintiffs' sole allegation as to defendant Sacramento County Sheriff Jim Cooper is that "[i]f it weren't for the inadequate monitoring, supervision, customs, training and policies enacted under Sheriff Jim Cooper, decedent's death could have been prevented." (ECF No. 19 at 8.)

To state a claim under § 1983, a plaintiff must demonstrate: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen v. Black, 297 F.3d 930, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). That is, plaintiffs may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be established in a number of ways, including by demonstrating that a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates was a cause of plaintiffs' injury. Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011). "Section 1983 is not itself a source of substantive rights,' but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510

U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations or the failure to train or supervise are not sufficient to state a claim. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citation omitted).

A supervisor's failure to train or supervise subordinates may give rise to individual liability under § 1983 where the defendant "was deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." Flores v. County of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014). "Under this standard, the plaintiff must allege facts to show that the official disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights." Hyde v. City of Wilcox, 23 F.4th 863, 874 (9th Cir. 2022) (internal quotations, brackets, ellipsis, and citations removed).

Here, plaintiffs' sole allegation as to defendant Jim Cooper merely concludes he is liable, without setting forth specific facts or identifying particular policies. Such conclusory statement is insufficient to state a cognizable Eighth Amendment violation or policy or failure to train theory of supervisor liability. Plaintiffs' claims against defendant Jim Cooper should be dismissed without prejudice.

### 4. Defendant CDCR

Plaintiffs included no specific charging allegations against the CDCR. In any event, based on plaintiffs' allegations, a claim against the CDCR would be barred. The Eleventh Amendment serves as a jurisdictional bar to suits brought by private parties against a state or state agency unless the state or the agency consents to such suit. See Quern v. Jordan, 440 U.S. 332 (1979); Alabama v. Pugh, 438 U.S. 781 (1978) (per curiam); Jackson v. Hayakawa, 682 F.2d 1344, 1349-50 (9th Cir. 1982). In the instant case, the State of California has not consented to suit. Thus, plaintiffs' claims against the CDCR are legally frivolous and must be dismissed.

///

8

5. *HIPAA Claim*

Plaintiffs challenge the disclosure of decedent's medical and mental health information under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Plaintiffs are correct that decedent's medical and mental health information is private, or confidential.[3]  However, HIPAA does not provide any private right of action.  U.S. v. Streich, 560 F.3d 926 (9th Cir. 2009); Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1081 (9th Cir. 2007) ("HIPAA itself provides no right of action.").  Accordingly, plaintiffs' HIPAA claim is barred.  The Court recommends that plaintiffs' HIPAA claim be dismissed with prejudice.

III.    LEAVE TO AMEND

On multiple occasions, plaintiffs have been put on notice of Rule 8's pleading standard, and instructed on the applicable law and pleading requirements.  (ECF Nos. 6, 12, 23.)  On November 3, 2025, this Court screened plaintiffs' second amended complaint and granted them an opportunity to amend.  (ECF No. 23.)  On December 3, 2025, plaintiffs filed notices of election claiming to elect to file a third amended complaint, but no proposed third amended complaint was provided.  (ECF Nos. 25-27.)  On January 20, 2026, plaintiffs were granted 21 days to submit their proposed third amended complaint.  (ECF No. 28.)  On February 12, 2026, plaintiffs filed their untimely third amended complaint.  (ECF No. 29.)  Despite being granted leave to amend to state cognizable claims against Chris Carlson, Sacramento County, and Jim Cooper, plaintiffs did not include such parties in their proposed third amended complaint.

This action was filed on September 20, 2023, and since then, the Court has liberally granted plaintiffs multiple extensions of time to file an operative complaint that stated cognizable claims.  See ECF No. 9 (60 days to file amended complaint); ECF No. 15 (60 days to file second amended complaint); ECF No. 17 (60 days to file second amended complaint); ECF No. 28 (21 days to file third amended complaint).  The plaintiffs were cautioned that no further extensions of time would be granted.  (ECF No. 28 at 1.)

---

[3] "A provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization. . . ." California Civil Code § 56.10(a) (exceptions provided in subdivision (b) or (c) not applicable here).

9

Under these circumstances, this Court finds that granting another opportunity to amend at this juncture would be futile. See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments). The Court recommends that plaintiffs not be granted further leave to amend. Instead, this action will proceed on plaintiffs' Eighth Amendment claims against defendants Dylan Schmidt and Deputy Arnold alleged in the third, fourth and fifth claims in plaintiffs' SAC.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' third amended complaint (ECF No. 29) be stricken as untimely.

2. Plaintiffs' claims against defendants Chris Carlson and Jim Cooper, and the putative claims against Sacramento County, be dismissed without prejudice.

3. Plaintiffs' claims against defendants SCJ, ACH, and CDCR be dismissed with prejudice.

4. Plaintiffs' HIPAA claim be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiffs may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiffs are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 9, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/dres2308.56

10